January 12th.
Wieds, J.,
declared the opinion of the court, all concurring. The special verdict under which this case is submitted, amongst other things states, that the late general John M’Pher-son executed just before his departure for England, on or about the 21st June, 1803, his last will, in which, after other devises, is the following clause: “ I also give and devise to my said daughter Elizabeth three hundred acres, being part of my Newton tract of land, whereof one hundred to be tide swamp, one hundred supposed to be back swamp, and one hundred acres upland; the whole quantity to be taken from the north east end of the said tract.” In another clause *284 0f the will, the following devise is contained, viz : “ I give and devise to my two beloved daughters Nancy and Susan, and to their res. pective heirs and assigns forever, equally to be divided between them aS tenauts common, all my Pon Pon plantations(except the three hundred acres herein before devised to my daughter Elizabeth.”jThe special verdict stales, that soon after executing this will, viz. in June, 1803, general M’Pherson placed it in the hands of one of his executors, and sailed for England, from whence he returned some time in the next year. That some short time after his return, his said executor, Mr. De Saussure, delivered to him his said will, without interlineation, erasure or obliteration. That some time in August, 1806, general M’Pherson died, leaving his widow, Mrs. Susan M’Pherson, his daughter Elizabeth, his son James, and his two daughters Nancy and Susan. That after his death, his said last will was found, but the whole of the clause devising the three hundred acres, &c. (The opinion goes on to state the material facts, as to the obliteration, and the undiminished affection of the testator towards his daughter Elizabeth, and then proceeds.) The said will, after a bequest to Elizabeth of seventy negroes, and to James of one hundred negroes, gives all the remainder of the testator’s slaves to Mrs. M’Pherson and the two infant daughters. It also contains a residuary clause, giving all the rest and residue of the testator’s estate, real and personal, to his wife and four children.
The questions submitted by this verdict are : 1. Whether under all the circumstances, the erasure and obliteration of the clause in the will devising to Elizabeth three hundred acres, part of the New. ton tract on Pon Pon river, be, or be not a revocation of the same ? 2. If it be, whether the said lands re-unite with the whole tract from whence they were carried, and pass under the devise to Nancy and Susan ? 3. If not, whether the said lands in the clause so revoked, pass under the residuary clase of the said will 1 4. If not, whether they are distributable as an undisposed part of the testator’s estate?
It will at once be obseryed, that the importance of a decision on the three last grounds entirely depends upon the decision of the first. It is indeed the only question of difficulty in the whole case.
To constitute a good devise of lands, an act of 1789, and the sta. tute of frauds, of which, in this respect, it is an exact transcript, require that it shall be in writing, signed by the person making the same, or by 'some other person in his presence, and by his direction, and attested by three witnesses in the testator’s presence. To revoke a will, thus made, it is either necessary that such intention should be expressed in writing, attested and subscribed by three *285 witnesses, or, by destroying or obliterating the same by the testator himself, or some other person in his presence and by his direction. Less ceremoney, it will be seen, is necessary in revoking than in making a will. The intention of the testator is the law of wills. Oar statutory provisions form a constitution of first principles paramount to this law, to which, to be legitimate, it must conform. Whenever the intention to devise has been expressed with requisite formalities, while suffered to exist, it remains unimpeachable, except by evidence of equal authority, and subsequent in date. But our acts, recognizing a great fundamental principle, which pervades other institutions, as well as that under consideration, namely, that the power creating is competent to destroy, has left it in the power of a devisor, at any time, to revoke any will, though made by him with all possible formality, either by the destruction of the whole, or an obliteration of its parts. It is only then, where a will, duly executed, is left in existence, that another instrument, of equal authenticity, is necessary to countervail its operation. In the case before the court, the will of the testator has been fully, as well as legally, expressed. It is not pretended that any change of intention, in the testator, has been expressed, with equal deliberation and solemnity. It is, however, said, he has revoked one of his devises in his will, by a mode recognized by the law, by obliterating, and cancelling, the clause which contained it. To this, I will observe, were we .to confine our inquiries entirely to the facts, presented by the.special verdict, and most unquestionably, in strictness, we are bound to do so, as it is our province to declare the law arising from facts, and not to declare the facts'and the law involved in them, there would be no difficulty in this case, as it does not appear from any thing found by the jury, that these acts, which it is contended amount to a revocation, were performed by Gen. M’Pherson ; and, if not, there would be an end of the difficulty. If the circumstances which would establish a different conclusion, were so feeble, as not to enable a jury, the exclusive judges of facts, to pronounce him ■the author of this transaction, will they authorize this court to do so ? Shall they undertake to declare that a will executed with more than ordinary deliberation, and at least with ordinary solemnity, where there has been no alteration in the testator’s affections, and a most favorable one in his circumstances, has been revoked, because the same will is produced after his death, wdth two of its clauses obliterated, but by whom unknowm 1 . Unquestionably not. If we were to judge from the facts before us, without recollecting the persons involved in them, would not the presumption be more na *286 tural, that those erasures were made by those whose interests were 1 " impairbd by the devise, and would be promoted by its revocation ? B *3i however, conceded in argument, that this will, thus obliterated, was found in the desk of the testator after his death, to which, <ju-ring his life, he alone had access. It seems most remarkable, that a fact so important in this case, should form no part of the special verdict. It is almost the only fact presented which authorizes the inference, that this alteration in the will was the act of the testa, tor, and it goes very far in proving, satisfactorily, that such was the case. On my own part, I should hold, most clearly, that this fact, though admitted on both sides, should have no influence on the legal decision of this case, did it change the decision which ought to be given upon it; because, though such a judgment might give satisfaction to those who have heard the admission of the fact, and felt its influence, yet to posterity, who must seek alone in the archives of our transactions for a developement of the principles by which we are governed, there would be ample matter, both for surprise and mortification, at our plain aberration from the well defined duties of our station. But in the view which we have taken of this case, the admission of this fact does, in no wise, impugn the decision which ought to be given without it. I am clearly of opinion, that without this fact we should have no evidence of the transaction being that of the testator, and, of course, it would be no revocation of the devise. I am, also, of opinion, that with this fact, and another which seems its consequence, viz., that the obliteration was made by the testator, the decision ought to be the same. It lias been already stated, and I repeat it again, that by the provisions of our laws less ceremony is necessary in revoking than in making a will. I have endeavored to hint at the reasons for this distinction. In the present case, I admit, the obliterations apparent on the face of the will, are abundantly sufficient to revoke the clauses on which they are made, or even the whole will, had they extended so far, provided they were made by the testator, with an intent to produce this effect. The quo animo is the dis. criminating feature which stamps the importance of a transaction of this sort. It identifies an act equivocal in its nature with the legal effect which it is intended to produce. But, unfortunately, here again, we are encountered with a difficulty, which we are not legally competent to surmount. Here, again, the judge is called upon to officiate in the humble province of a jury. The animo re* vocandi is a question of fact which the jury alone should decide; The special verdict should have stated, whether from the facts and *287 circumstances before them, the testator made the obliteration, and if so, with what intent he did so. The question then would have presented itself disembarrassed of extraneous matter, and would have admitted of a more correct decision. But since we are called upon to discharge duties not our own, I will endeavor to fulfil this duty, as well as I am able. Ignorant of what was the testator’s real intention, I will give him a reasonable and legal one; one which would influence other men in a like situation, and one which seems naturally to result from the examination of the whole transactions Uncertain what might be the opinion of a jury on these facts, 1 would presume such an opinion would have been a reasonable one, and will make my own judgment the standard of what is so in this case. See Pow. on Dev. 634, and seq. Cowp. 62. 1 P. Wm.’s 346. 3 Wils. 608. 2 Bl. Rep. 1043.
It appears to me, that a careful examination of this transaction will leave but one impression, as to the intention of the testator. About to depart for England, after great deliberation, and profiting by as able advice, and assistance, as his country afforded, he made his will, which it was then thought might probably be a final arrangement of his affairs. For his daughter, Elizabeth, perhaps his first born, at all events an object of his most tender affection, he first provides. The manner of the provision shows the estimation in which she was held. Besides seventy negroes, and a valu. ble plantation of between five and six hundred acres of land, he carves out of another estate, adjoining that first given, the 300 acres in question, which, from description, must be immensely valuable. To his son, who was to perpetuate his family name, he gives a princely estate, much greater than that given to his favorite daughter ; and for his wife, and two young children, he makes ample provision. He makes his voyage to England, and returns in safety ; and, after the successful exertions of nearly three years, had much improved his estates, no doubt, new views had began to open to his mind, and new arrangements of his property to seem necessary. Instead of giving to his two younger daughters the remnant of his Pon Pon plantation, after carving out of it so valuable a portion for his eldest daughter, he now probably saw he was able to give them the whole estate, and to indemnify Elizabeth in some other way, if he deemed it necessary. That- such must have been his intention, appears evident from a variety of considerations. 1. From the will itself; the manner in which the two obliterations are made, correspond exactly with each other, and warrant this -construction. The clause, which gives these 300 acres to Eliza* *288 beth, is struck out, and from the clause which gives the whole of the Pon Pon plantation to Nancy and Susan, is stricken out the exception of 300 acres previously given to Elizabeth, which leaves the devise of the whole to them in general words. I deem it probable the testator supposed this alteration in his will, would produce the effect intended, without republication, because I find, even now, the learned disagreeing, in opinion, on that point. He could not consistently have revoked this devise to Elizabeth, because he had not done justice to his other children ; because it is said his circumstances were greatly improved. He could not have done so on account of any change of his affections towards her, because the verdict finds the reverse. He certainly did not intend to revoke liis benevolence from Elizabeth, in order that the subject of it might pass to his heirs in general, named in the residuary clause; because, besides the confusion which the division of this small tract into so many parts, would occasion, which he every where seems studious to avoid, he had already most bountifully provided for them. He could not have intended to have died intestate as to this small part of his estate, because the confusion just stated would be the consequence ; and there seems no apparent purpose to be answered by such a measure ; and, besides, the residuary clause shews, that he did not intend to die intestate at all. There seems, therefore, no reasonable motive which can be assigned to him, except that which 1 have attributed to him, namely, for some cause which does not appear, he changed his mind with respect to these three hundred acres, and concluded to give the whole estate, without this deduction, to his younger daughters. This intention, it has been argued for the defendants, the will in its present shape, is legally incapable of carrying into full effect. It has been ingeniously said the general words of this clause gives the whole of the Pon Pon tract to Nancy and Susan ; but the exception afterwards comes and takes away these three hundred acres. That the revocation of the exception restores the operation of the general clause, and Susan and Nancy claim the whole under the first devise, and not as a new gift. It is said the mode of revocation is equally legal with the whole, or a part, of the will, with any clause, or part of a clause. This reasoning is not sound. It is true the obliteration of these two clauses would, if standing alone, amount to a revocation of the devise contained in them. It is true they restore the general words of the clause, which would pass the whole estate to Nancy and Susan ; but it is not true that these acts, without a republication, will have this effect. The words of the clause, *289 fsffer the revocation of the exception, become capable of con* Veying the whole, but do not do so, until a new manifestation of the testator’s intention appears, in the mode prescribed by law. It is, as to the devisees, a new devise S as to the testator, a new estate, which he can only devise in the same mode the former was conveyed. A new clause, to be sure, is unnecessary, because the words of the first are apt to convey the whole, and only require the sanction of a new publication, to become valid. At the time the will was executed, the testator did not intend to give the whole of these lands to his youngest daughters; The exception most clearly shews he did not. The correct rule, I take to be that laid down in argument, namely, whatever alters either the quality or quantity of an estate devised, renders it a new devise, and requires a new publication. See 5 Com. Dig. Tit. Wills.
It appears to me clear, that the testator, intended to revoke this devise to Elizabeth, with a view of giving the lands, therein contained, to Nancy and Susan. He wished them to have the whole, in preference to Elizabeth ; but her, in preference to the rest of his heirs. And it appears to me more clear, that such intention has been defeated of its effect, for want of republication. It has, how-fever, been urged, and I believe to the conviction of some of the members of this court, that the testator may have made this obliteration, with a view of amplifying the estate of his two youngest daughters; and though this act of revocation be. incompetent to produce this effect, for want of a rrpublicalion, yet it is a good revocation of his will fro tanto, and the devised lands shall pass to his heirs at law, as property undisposed of. To maintain this position, it seems to me, requires a total abandonment of the foremen, tioned principle of this branch of law, A testator deliberately, and solemnly, executes his will. It, at the time, contains the expression of his entire wishes relative to his estate. Some event, unlooked for at the time, occbrs, which renders a modification of his arrangements desirable. To attain this object, and this alone, he is disposed to revoke his first will. He performs an act, deemed by himself sufficient for this purpose, but which, from the operation of technical rules, of which be is ignorant, fails to produce the effect. Could it be said, that his will was regarded in a rule which declares this act of revocation incompetent to accomplish the object, for which alone he was disposed to change his first will, and yet competent to revoke his first will altogether? Because he has unsuccessfully attempted to better the arrangements j of his estate, he shall have his arrangements set aside altogether! t *290 a Pr'nc*pls is equally unreasonable, and unlawful. A great variety of cases, to be collected from the books, very clearly settle this doctrine, as reason and common sense would seem to require. In case Onions v. Tysen, 1 P. Wms. 345, one duly executed, as the law directs, his will, devising his lands to trustees, to several uses. He some time afterwards made another will, devising them to other trustees, but to the same uses ; and in this will there was a clause revoking, expressly,. all former wills. This will, though subscribed by the testator, and attested by three witnesses, yet they did not subscribe their names in the presence of the testator, and consequently void as to the lands. Yet it was contended it was a good revocation, so as to let in the heir at law. But it was determined that cancelling a former will, under a presumption that a latter will is good, which proves void, shall not operate as a revocation of the first, for where the second devisee takes nothing, the first shall lose nothing. The act of cancelling is an equivocal act, which, to operate as a revocation, must be done animo revocandi. But, in the same case, it appears, where the second will barely revokes the first, without making any other disposition of the property devised, it shall be good, if executed agreeably to law. In the present case I have already admitted, that the obliteration of these clauses amount to a revocation of the devise they contained in them, did not the whole case furnish evidence that another disposition of the estate was intended by the testator to have been effected, which has failed. The case of Bartonshaw v. Gilbert, in Cowp. 49, recognizes the doctrine of Onions v. Tysen. In Larkins v. Larkins, 3 Bos. and Pul. Lord Alvanley says, “ A revoca tion by obliteration, will have the same effect as a revocation in any other way, and no more.”. And in the same case, it is said, “ It must be done animo revocandi, and the effect of the act shall extend no further than such an iutention appears.” In Short v. Eastvill and Smith, 4 East. 428-9, Lord EUenborough sanctions the above doctrine, and declares, that the cancellation of a former will, under an impression that a subsequent will was duly executed, but which was void, not being executed according to the statute of frauds, is no revocation. In the case ex parte the Earl of Win. Chester, 7 Yes. jr, 374, Lord Alvanley examines this doctrine at great length, reviews most of the cases to be found in the books, and concludes with these very strong words, “ There is, therefore, no authority in the way of this proposition, that an instrument imperfect to the point to which it is directed, shall not operate as a revocation of a will duly executed.”
Note. The special verdict prays the advice of the associate justices in the Constitutional Court. Quere. Ought the court to have entertained the motion until the questions submitted had been first determined in the District Court? The jury find so many dollars damages for the party in whose favor judgment shall be given. Quere. Is not such finding impertinent, andforeign to the issue? Damages are also found for the residuary legatees, no parties to the issue. Quere. Should not the verdict have been confined to what the plaintiffs had a right to under the will, as specific or residuary devisee, and no more ? Quere, as to the legal meaning of obliteration. Does it mean extinction of legibility, or not? Parol evidence of the revocation of a will is inadmissible. 3 Johns. N. Y. T. R. 31, Vesey, jr. 2.
Upon the whole, I am of opinion, that this obliteration, if made by the testator, was done with an intention of passing the lands eon. tamed in the same, to his two youngest daughters, Nancy and Susan. That this intention being defeated, for want of republication, the act of obliteration does not amount to a revocation ; and that the plaintiffs are entitled to judgment. This being my opinion on the first point, it becomes wholly unimportant who would have been entitled, provided this act had amounted to a revocation. I have already, however, had occasion to say Nancy and Susjin could not have taken. I do not think the residuary devisees would have been entitled to the lands being otherwise disposed of at the time the will was executed. I, therefore, think tliey would have been distributable as property of the testator undisposed of.